UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KOOTENAI ENVIRONMENTAL ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, a federal agency, JAMES C. DALTON, in his official capacity, COL. BRUCE ESTOK, in his official capacity, BRIAN APPLEBURY, in his official capacity, and MARK OHSTROM, in his official capacity,<br><br>Defendants. | CASE NO. C11-2040 RSM<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING DEFENDANTS' ALTERNATIVE MOTION TO DISMISS THE CASE FOR LACK OF JURISDICTION |

**I. INTRODUCTION**

This case comes before the Court upon Defendant's motion for summary judgment or the alternative to dismiss the case for lack of jurisdiction. Dkt. # 24. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## II. BACKGROUND

Plaintiff is a non-profit corporation that works to conserve, protect, and restore the environment, particularly on the Idaho Panhandle and the Coeur d'Alene Basin.  Defendant is the United States Army Corp of Engineers, an agency of the federal government whose work includes flood protection control. Plaintiff filed a complaint for declaratory and injunctive relief alleging that Defendant violated the Administrative Procedure Act, 5 U.S.C. §§ 553, 706, and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* Dkt. #1.  Defendant then filed a motion for summary judgment or in the alternative to dismiss the case for lack of jurisdiction. Dkt. # 24. Defendant argues that judgment should be entered against Plaintiff because Plaintiff lacks both Article III and statutory standing, and Plaintiff's claims are not ripe.  *Id.*

Plaintiff's causes of action concern the Rosenberry Levee, which was built in the 1940's in Coeur d'Alene, Idaho for flood control.  Today, the levee is also used for recreation. In addition, the levee has environmental benefits associated with the mature riparian trees that grow on its embankment.

The city of Coeur d'Alene, which manages the Rosenberry Levee, voluntarily participates in the federal Rehabilitation and Inspection Program (the "Rehabilitation Program"). The Rehabilitation Program is administered by the Army Corps of Engineers (the "Corps"), and it assists cities with the repair and restoration of levees after a flood.  The program's regulations are set forth in 33 C.F.R. sections 203.41–203.51, Engineer Regulation 400-1-1, and Engineer Pamphlet 500-1-1.

Pursuant to the Rehabilitation Program, the Corps periodically inspects the Rosenberry Levee.  After each inspection, the Corps issues an inspection report with an overall system rating of "Acceptable," "Minimally Acceptable," or "Unacceptable."  The system rating is based on

1   predetermined standards designed to reflect an acceptable level of flood protection. In order to

2   remain eligible under the Rehabilitation Program, Coeur d'Alene must receive an "Acceptable"

3   or "Minimally Acceptable" overall system rating.

4          The Corps altered its inspection standards in April 2009 when it issued an Engineering

5   Technical Letter titled *Guidelines for Landscape Planting and Vegetation Management at*

6   *Levees, Floodwalls, Embankment Dams, and Appurtenant Structures* (the "ETL"). The ETL sets

7   standards to determine whether vegetation management is adequate in the event of a flood.  If a

8   city wants to manage vegetation differently than the ETL standards, then it may seek a variance.

9   One such variance is known as the Seattle Variance.

10          The Seattle Variance recognizes the importance of riparian vegetation to fish and wildlife

11   in the Pacific Northwest. In addition, the Seattle Variance permits discretionary judgment on

12   vegetation issues, which may allow a city to retain vegetation that exceeds ETL standards.  The

13   Corps applies the Seattle Variance in a site-specific manner.

14          Also, if Coeur d'Alene receives a "Minimally Acceptable" or "Unacceptable" rating, then

15   it may qualify for the System-Wide Improvement Framework ("SWIF") program. The SWIF

16   program accepts cities that must resolve particularly complex or difficult issues in order to raise

17   their ratings.  Notably, vegetation inspection standards and vegetation variance requests may

18   qualify as particularly complex issues.  SWIF allows cities to remain eligible for the

19   Rehabilitation Program while they work with federal, state, local, and Tribal agencies to make

20   improvements that will raise their overall system rating.

21          In 2010, the Corps conducted an inspection of the Rosenberry Levee. After this

22   inspection, the Corps issued the Periodic Inspection Report for the Rosenberry Levee (the

23   "Inspection Report").  The Inspection Report gave the Rosenberry Levee an overall system

24

1   rating of "Minimally Acceptable."  As such, the Rosenberry Levee remained eligible for the

2   Rehabilitation Program so long as Coeur d'Alene submitted a mitigation plan.

3       After the Corps issued the Inspection Report, it also issued a letter to Coeur d'Alene.  The

4   letter informed the city that a number of the Inspection Report's findings were inconsistent with

5   the Seattle Variance, and those findings could be disregarded or were for informational purposes

6   only.  The letter states that Coeur d'Alene would remain eligible for the Rehabilitation program

7   so long as it complied with the Seattle Variance standards, not the ETL standards.

8       Coeur d'Alene submitted a mitigation plan in August 2011.  In the plan, Coeur d'Alene

9   indicated a desire to raise its overall system rating by pursing all options for retaining the levee's

10  mature trees.  The plan states that Coeur d'Alene will seek a variance and a determination that

11  the existing trees do not compromise the levee's integrity.

12      Plaintiff claims that the Corps used the ETL standards rather than the Seattle Variance

13  standards when it rated the Rosenberry Levee as "Minimally Acceptable" in the Inspection

14  Report. The Inspection Report cites both the ETL and the Seattle Variance. Plaintiff alleges that

15  the Corps must have used the ETL standards because in prior years when it used the Seattle

16  Variance standards the Corps did not note any vegetation issues in its inspection reports.

17  Defendant points out that the 2008 and 2010 inspection reports note vegetation issues.

18       Amidst inspections of the Roseberry Levee, the Corps submitted a Policy Guidance

19  Letter (the "PGL") in February 2010 for public comment. The PGL proposes to change the

20  application and consideration process for variance requests. The Corps resubmitted the PGL for

21  public comment in February 2012, which was after the Rosenberry Levee received its

22  "Minimally Acceptable" rating.

23

24

1   The Corps adopted the ETL and Inspection Report without completing an Environmental

2   Assessment ("EA") or an Environmental Impact Statement ("EIS").  The Army Corps did not

3   provide public notice and comment for the ETL or Inspection Report.  And NEPA documents

4   were never prepared on tree management for the Rosenberry Levee.

5   Plaintiff is now concerned that the ETL and Inspection Report will result in the removal

6   of trees from the Rosenberry Levee without any environmental analysis.  According to Plaintiff,

7   the trees "provide numerous social, environmental, and economic benefits."[1]  Dkt. # 31, p. 6.

8   Plaintiff alleges that if the trees are removed from the levee, then the loss may impact

9   community members who use the park; the scenic nature of North Idaho college; the habitat in

10   and among the trees; and the water quality and riparian zone of Lake Coeur d'Alene and the

11   Spokane River.  Dkt. 1, ¶ 52.

12   Since 1971, the Corps's vegetation policy recognizes that vegetation can have negative

13   and positive effects on levees. Vegetation can compromise the structural integrity of a levee,

14   impede access for maintenance and inspection, and hinder emergency flood fighting operations;

15   however, trees enhance environmental benefits and provide aesthetic value.  Dkt. # 24, p. 3.

16   As a result of the concerns described above and the Corps's actions taken on behalf of the

17   Roseberry Levee, Plaintiff now challenges the ETL and Inspection Report under the APA and

18   NEPA.  Specifically, Plaintiff alleges the following: 1) Defendant violated the Administrative

19   Procedure Act (APA), 5 U.S.C. § 553, when it issued the ETL without first providing notice and

20   comment; 2) Defendant violated the APA, 5 U.S.C. § 706, and the National Environmental

21   Policy Act (NEPA), 42 U.S.C. § 4332(2)(C), when it issued the ETL without first conducting an

22   Environmental Assessment (EA) or an Environmental Impact Statement (EIS); and 3) Defendant

23   _____

24   [1] The social benefits include: making paved areas cooler and more comfortable through shading,

1  violated the APA and NEPA when it issued the Inspection Report without conducting NEPA

2  analysis.  Dkt. #1, ¶¶ 53–61. Defendant contends that the Court should enter summary judgment

3  against Plaintiff because Plaintiff lacks standing and its claims are not ripe.

**III. DISCUSSION**

**A.  Standard of Review**

6       Summary judgment is appropriate when "the movant shows that there is no genuine

7  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

8  R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on

9  summary judgment, a court does not weigh evidence to determine the truth of the matter, but

10  "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d

11  547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d

12  744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit

13  under governing law.  *Anderson,* 477 U.S. at 248.

14       The Court must draw all reasonable inferences in favor of the non-moving party.  *See*

15  *O'Melveny & Meyers*, 969 F.at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the

16  nonmoving party must make a "sufficient showing on an essential element of her case with

17  respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v.*

18  *Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in

19  support of the plaintiff's position will be insufficient; there must be evidence on which the jury

20  could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 251.

**B.  Analysis**

22       Defendant moves for summary judgment on all claims pursuant to Fed. R. Civ. P. 56(a).

23  Defendant argues that Plaintiff lacks Article III standing, statutory standing, and ripeness to

24  challenge either the ETL or the Inspection Report.  Dkt. #24, p. 1–2.  In the event that the Court

finds that summary judgment is not appropriate for jurisdictional challenges, Defendant also asks

the Court to dismiss Plaintiff's claims pursuant to 12(b)(1) for lack of subject matter jurisdiction.

*Id.* at n.4. The Court finds that summary judgment is warranted.  Accordingly, Defendant's

arguments regarding dismissal for lack of jurisdiction are moot.

1.  <u>The Court will Review Defendant's Motion pursuant to the Rule 56 Summary Judgment</u>
    <u>Standard rather than a 12(b)(1) Motion to Dismiss.</u>

As a threshold matter, Plaintiff argues that the Court cannot grant Defendant's motion

because it raises jurisdictional challenges, which must be resolved by a Rule 12(b) dismissal

rather than summary judgment.  Dkt. # 31, p. 8. The Ninth Circuit has held that dismissal rather

than summary judgment is appropriate when a court lacks subject matter jurisdiction.  *Mackay v.*

*Pfeil*, 827 F.2d 540, 543, 545 (9th  Cir. 1987) (vacating the United States District Court for the

District of Alaska's grant of summary judgment and remanding the case with an order to dismiss

the case for lack of subject matter jurisdiction). Yet the Ninth Circuit has also used summary

judgment to dispose of a case when the claimant failed to allege facts sufficient to meet standing

requirements.  *United States v. $133,420.00 in U.S. Currency,* 672 F.3d 629, 638) ("[T]o

withstand a motion for summary judgment on the ground that the plaintiff lacks standing, a

plaintiff cannot rely on mere allegations but rather must set forth by affidavit or other evidence

specific facts, which for purposes of the summary judgment motion will be taken to be true")

(internal quotations and citations omitted); see also *United States v. Approximately $658,830.00*

*in U.S. Currency*, 2:11-CV-00967 MCE, 2012 WL 3233642 (E.D. Cal. Aug. 6, 2012) ("At the

summary judgment stage, the district court must ask itself whether 'a fair-minded jury' could

find that the claimant had standing on the evidence presented");  *United States v. 11290 Wilco*

*Highway*, 3:11-CV-00640-MA, 2012 WL 5332035 (D. Or. Oct. 29, 2012) ("To withstand a

motion for summary judgment for lack of standing, a claimant must set forth by affidavit or other

1  evidence specific facts supporting a finding that he possesses an ownership or possessory interest

2  in the property").

3        Moreover, the Supreme Court has resolved standing issues under summary judgment in

4  at least two prominent environmental law cases.  In *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871

5  (1990), the Supreme Court reversed the United States Court of Appeals for the District of

6  Columbia circuit's denial of summary judgment because the claimant failed to allege specific

7  facts that would establish Article III standing necessary to survive a motion for summary

8  judgment. *Nat'l Wildlife Fed'n*, 487 U.S. at 889.  And in *Lujan v. Defenders of Wildlife*, 504 U.S.

9  555 (1992) the Supreme Court held that in response to a summary judgment motion, the plaintiff

10  must set forth by affidavit specific facts to show that it has Article III standing. *Defenders of*

11  *Wildlife*, 504 U.S. at 561. Similarly, the Defendant's jurisdictional challenges here concern

12  Plaintiff's Article III and statutory standing.  Therefore, this Court may and will resolve

13  Defendant's motion pursuant to Rule 56. [2]

14        The Court may also review Defendant's motion for summary judgment because Plaintiff

15  failed to show that the Administrative Record is incomplete for purposes of deciding summary

16  judgment. When a party asks the court to find that a record is incomplete, it must show by

17  affidavit that for specified reasons it cannot present facts essential to justify its position. *Citizens*

18  *for Responsibility & Ethics in Washington v. Leavitt*, 577 F. Supp. 2d 427, 433–434 (D.D.C.

19  2008). By affidavit, Plaintiff suggests that it needs more materials to prove that the ETL and

20  Inspection Report are final agency actions.  Dkt. # 32, ¶¶ 25–27.  According to Plaintiff, the

21  

22     [2] As an element of subject matter jurisdiction, the issue of standing should be raised by a
motion to dismiss for lack of jurisdiction over the subject matter. The standing issue can also be

23  raised by means of a summary judgment motion.  15-101 Moore's Federal Practice - Civil §
101.30. (footnotes omitted) (citing *Lujan*, 497 U.S. at 889).

24

1    record should include materials from the Corps's headquarters rather than just the Seattle office

2    because they will shed light on the Corps's decision-making process.  *Id.* at ¶ 5.  However,

3    Plaintiff does not specify what materials it needs, and Plaintiff does not specify why materials

4    related to the decision-making process will prove that the ETL and Inspection Report are final

5    agency actions.

6          Additionally, Plaintiff's affidavit (when read in conjunction with its response to

7    Defendant's motion for summary judgment) only specifies one set of materials that the

8    Administrative Record lacks — that is, all the past inspection reports for the Rosenberry Levee.

9    *See* Dkt. # 32, ¶ 16, Dkt. # 31, p. 15.  Plaintiff suggests that these reports will reveal that the

10   Corps must have used the ETL when it rated the levee because the reports never cited vegetation

11   issues when the Seattle Variance was in place.  *Id.*  But Plaintiff does not suggest how proving

12   the Corps used the ETL standards in the Inspection Report will in turn prove the ETL and

13   Inspection Report are final agency actions.  Moreover, Plaintiff's theory is without merit because

14   the Administrative Record includes the 2008 and 2010 reports, which explicitly note that

15   vegetation issues existed.  AR 535–548; AR 199–200.  Thus, the Court assumes that the record is

16   at least complete enough for purposes of deciding Defendant's summary judgment motion.

17       2.  Summary Judgment is Warranted because no Genuine Issue of Material Fact Exists and
            Defendant is Entitled to a Judgment as a Matter of Law.

18

19          To survive a motion for summary judgment, "[t]he mere existence of a scintilla of

20   evidence in support of the plaintiff's position will be insufficient; there must be evidence on

      which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 251.  Here,

21   Plaintiff failed to allege a genuine issue of material fact concerning either the ETL or the

22   Inspection Report.  Additionally, Defendant is entitled to a judgment as a matter of law because

23

24

1    Plaintiff failed to allege evidence sufficient for Article III standing to challenge either the ETL or

2    the Inspection Report. Accordingly, summary judgment in favor of Defendant is warranted.

3        Plaintiff alleges that a genuine issue of material fact exists as to whether Defendant

4    applied the ETL standards as informational guidance or as controlling standards when it rated the

5    Rosenberry Levee as "Minimally Acceptable." Dkt. # 31, pp. 15–16. Plaintiff supports its

6    argument based on the following: (1) the Corps has not produced a complete administrative

7    record; (2) the ETL superseded the Seattle Variance when the Corps issued the PGL; (3) the

8    Inspection Report cites to the ETL; (4) previous inspections that used the Seattle Variance

9    standards found no vegetation issues; and (5) the Corps's characterization of the ETL as used in

10   the Inspection report is not determinative. *Id.*

11       Plaintiff's allegations are insufficient to show that a reasonable juror could find that the

12   Corps applied the ETL standards as anything but informational guidance when it rated the

13   Rosenberry Levee. First, the Administrative Record includes the post-Inspection Report letter,

14   which specifically states that the Seattle Variance standards are in place.  AR 511.  The letter

15   also states that in order to raise its rating, Couer d'Alene needs to comply with the Seattle

16   Variance standards, not the ETL standards.  *Id.*  Second, no evidence suggests that the ETL

17   standards superseded the Seattle Variance when the Corps issued the PGL for public comment

18   because the Corps never adopted the PGL.  Third, although the Inspection Report cites to the

19   ETL, each of those citations includes a citation to the Seattle Variance as well.  AR 508–509; 16,

20   23–24, 38–39, 44, 174, 182, 333, 345.  Fourth, no evidence suggests that the Inspection Report's

21   treatment of vegetation issues is drastically different than previous inspections because the 2008

22   Inspection Report also cites vegetation issues (AR  538, 541), and the 2010 report recognizes

23   vegetation as a reoccurring issue as well.  AR 199–200.  Finally, while Defendant's

24

1    characterization of the use of the ETL is not determinative, no evidence supports Plaintiff's

2    characterization of the ETL.  Because Coeur d'Alene must adhere to the Seattle Variance

3    standards to raise its overall system rating, no genuine issue of material fact exists in regards to

4    Plaintiff's ETL claims.

5         Plaintiff also failed to raise a genuine issue of material fact in regards to its Inspection

6    Report claim. Plaintiff challenges whether the Inspection Report is a final agency action.  In

7    order to prove that the Inspection Report is a final agency action, Plaintiff must satisfy a two-

8    prong test.  *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  First, Plaintiff must show that the

9    challenged agency action represents the consummation of the agency's decision making process.

10   *Id.* at 983–84. Second, the agency action must be one by which rights or obligations have been

11   determined, or from which legal consequences will flow.  *Id.* at 986. The Inspection Report is not

12   the consummation of the Corps's decision making process regarding vegetation on the levee

13   because it does not require Coeur d'Alene to take any action regarding the trees on the

14   Rosenberry Levee.  Moreover, the Inspection Report does not have any legal consequence

15   regarding vegetation because it does not require Coeur d'Alene to remove any trees from the

16   levee. Thus, the Inspection Report is not a final agency action.

17        Finally, Defendant is entitled to a judgment as a matter of law because Plaintiff lacks

18   Article III standing. In order to establish Article III standing to challenge an agency action, a

19   plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized

20   and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

21   challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

22   injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

23

24

1    560 –61 (1992).  Thus, a Plaintiff demonstrates a sufficient injury in fact if it establishes that its

2    alleged injury is concrete and actual or imminent.  *Id.*

3              In regards to the ETL, Plaintiff's alleged injury is the loss of the aesthetic and

4    environmental benefits associated with the trees on the Rosenberry Levee.  Although aesthetic,

5    conservational, and recreational interests are recognized harms under the injury in fact standard,

6    the Administrative Record clearly shows that the ETL will not be responsible for these harms.

7    *Sierra Club v. Morton*, 405 US 727, 734 (1972).  The fact remains that the ETL standards were

8    used only for informational guidance when the Corps rated the Rosenberry Levee as "Minimally

9    Acceptable," and Coeur d'Alene can raise its rating by adhering to the vegetation standards

10   articulated in the Seattle Variance.  This indicates that no injury in fact exists for two reasons.

11   First, the only consequence of the "Minimally Acceptable" rating is the requirement that Couer

12   d'Alene submits a mitigation plan; it does not mandate the removal of trees.  Second, Couer

13   d'Alene is not required to remove trees in order to raise its rating because it only has to adhere to

14   the Seattle Variance, which permits discretion for vegetation issues.  Thus, no matter what role

15   the ETL had in the rating, the alleged harm associated with the loss of trees has no connection to

16   the ETL.  Accordingly, Plaintiff has not alleged injury in fact, and does not have Article III

17   standing to challenge the ETL.

18             Plaintiff also failed to allege injury in fact for its Inspection Report claim. Plaintiff's

19   alleged injury from the Inspection Report is the same as its alleged injury from the ETL— the

20   loss of aesthetic, recreational, and environmental value associated with the trees along the

21   Rosenberry Levee.  *See* Dkt. 31, p. 21.  But Plaintiff's argument that the Inspection Report will

22   result in the removal of trees depends on its argument that the ETL standards effectively mandate

23   the removal of trees.  *Id.*  But again, the ETL standards are not the controlling standards in the

24

Inspection Report, so the Inspection Report has no bearing on whether Coeur d'Alene will remove trees from the levee. Thus, no injury in fact exists, and Plaintiff lacks Article III standing to challenge the Inspection Report. Accordingly, the Court grants defendant's motion for summary judgment.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. # 24) is GRANTED and this case is closed

(2) The Clerk of the Court is directed to send a copy of this order to all counsel of record.

Dated this 14th day of November 2012.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE